INMAN, Judge.
 

 *682
 
 The State appeals from an order entered by Judge Ola M. Lewis in Bladen County Superior Court recusing the District Attorney of the 13th Judicial District and his staff from further prosecuting Jeffrey Scott Smith ("Defendant") and five unnamed co-defendants
 
 *868
 
 in criminal actions arising from the commercial use of promotional internet software. The State also appeals from the denial of its motion to reconsider the recusal
 
 *683
 
 order. The State argues that the trial court's order must be vacated on three grounds: (1) the trial court exceeded its lawful authority by recusing the entire District Attorney's Office, (2) the
 
 sua sponte
 
 nature of the recusal order-decided without notice or a hearing-undermines the adversarial process of our legal system, and (3) the trial court's findings of fact are not support by any evidence.
 

 After careful review, we vacate the trial court's recusal order and remand for further proceedings. Because we vacate the recusal order, the State's appeal from the trial court's denial of its motion for reconsideration is moot.
 

 Factual and Procedural History
 

 On 10 June 2013, Defendant was indicted on two counts of electronic sweepstakes violations pursuant to
 
 N.C. Gen. Stat. § 14-306.4
 
 (b) in case numbers 13 CRS 50477 and 13 CRS 50479. Defendant entered a plea of not guilty, the case proceeded to trial, and on 10 April 2014, a mistrial was declared following a deadlocked jury. Defendant, who had been released on pre-trial bond, remained free pending the resolution of the charges.
 

 Defendant was next indicted on 6 July 2015 on seven counts of felonious possession of five or more video gaming machines (15 CRS 944, 947, 948, 949, 950, 951; 15 CRS 50858), seven counts of felonious operation of five or more video gaming machines in violation of
 
 N.C. Gen. Stat. § 14-306
 
 .1A (15 CRS 945, 946, 956, 957, 958 959; 15 CRS 50855), two counts of misdemeanor gambling (15 CRS 952, 953), and two counts of misdemeanor electronic sweepstakes violations pursuant to
 
 N.C. Gen. Stat. § 14-306.4
 
 (b) (15 CRS 954, 955). The State filed a motion to revoke Defendant's initial bond of $68,750 and to set a new secured bond in the amount of $500,000.
 

 Defendant filed a response to the State's motion to increase bond, along with a motion to dismiss all charges for prosecutorial vindictiveness. On the same day, Cybernet LLC and Aladdin Real Estate, LLC, business entities affiliated with Defendant, filed a civil complaint in Bladen County Superior Court against Jonathan David, in his individual capacity and in his official capacity as the District Attorney for the 13th Judicial District, James McVicker, in his individual capacity and in his official capacity as the Sheriff of Bladen County, and Travis Deaver, in his individual capacity and in his official capacity as a Deputy Sheriff of Bladen County.
 

 A hearing on the State's motion to increase bond was set for 11 January 2016, but the parties agreed to continue the hearing, after
 
 *684
 
 Defendant's motion to dismiss the charges for prosecutorial vindictiveness was served on the State only three days before the proposed hearing.
 

 Despite the parties' agreement to seek a continuance of the State's motion, at the 11 January 2016 Criminal Session of Bladen County Superior Court, the trial court,
 
 sua sponte
 
 and without a hearing, rendered an oral order removing the District Attorney for the 13th Judicial District, and his staff, from serving as the prosecutors in the pending matters regarding Defendant.
 
 [1]
 
 Two days later, the trial court issued its written order of recusal, signed
 
 nunc pro tunc
 
 to 11 January 2016, in which it made the following Findings of Fact:
 

 1. That the Defendant stands charged with twenty (20) indictments, all involving Defendant's wife's businesses which use internet promotional software.
 

 2. That the State and the Defendant had agreed to continue the hearing since the District Attorney was served on January 8th, 2016 with the vindictiveness dismissal motion.
 

 3. That, also on Friday, January 8th, 2016, a civil action was filed against the District Attorney, and others, which involves damages suffered by Defendant's company and Defendant's wife's company during the Bladen County Sheriff's raid which resulted in most of the Defendant's criminal charges. That file is 16 CVS 9, Bladen County Clerk of Superior Court, and is incorporated herein.
 

 *869
 
 4. That the Court finds that the civil filing creates a conflict of interest, and that the District Attorney for the 13th Judicial District, and his staff, should be recused from further prosecution of the criminal action.
 

 5. That there are five (5) Co-Defendants charged with the same offenses as the Defendant, arising out of the same facts and circumstances.
 

 From these facts, the trial court made the following Conclusions of Law:
 

 1. That the Court has jurisdiction over the subject matter of this action.
 

 *685
 
 2. That the civil action filed in File No. 16 CVS 9, against the District Attorney for the 13th Judicial District, creates a conflict of interest which prevents the District Attorney from being involved in further prosecution of the Defendant.
 

 3. That the District Attorney should be recused from any further criminal prosecution of the Defendant or any co-Defendants.
 

 The trial court's order decreed:
 

 Based on the Foregoing Findings of Fact and Conclusions of Law, it is hereby Ordered, Adjudged, and Decreed that the District Attorney for the 13th Judicial District, and his staff, are hereby recused from any further prosecution of these cases or any of the cases of the Co-Defendants.
 

 Two days later, on 15 January 2016, the State filed a motion for reconsideration of the recusal order. A hearing was set for 25 April 2016, however before this date, the State waived its request for a hearing and requested that the motion be decided on the briefs. The trial court denied the State's motion by order signed on 1 August 2016 and filed 19 August 2016. On 16 August 2016, the State filed a notice of appeal from both the recusal order and the denial of its motion to reconsider. The State withdrew this appeal on 5 December 2016.
 

 A month later, on 6 January 2017, the State filed a petition for writ of certiorari with this Court seeking review of both the recusal order and the denial of its motion to reconsider. We granted this petition by order entered 24 January 2017.
 

 Analysis
 

 The State argues that the trial court's recusal order must be vacated because the trial court exceeded its lawful authority by recusing the entire District Attorney's Office from further prosecution of Defendant and the unnamed co-defendants. We agree.
 

 1. Appellate Jurisdiction and Standard of Review
 

 North Carolina's appellate courts have not previously reviewed a trial court's order recusing a district attorney's office. We have, however, reviewed a trial court's order disqualifying a district attorney's office.
 
 See
 

 State v. Scanlon
 
 ,
 
 176 N.C. App. 410
 
 , 434,
 
 626 S.E.2d 770
 
 , 786 (2006). For the purposes of our review today we note the primary distinction between
 
 recusal
 
 and
 
 disqualification
 
 is the self-imposing nature
 
 *686
 
 associated with
 
 recusals
 
 compared with the directive nature associated with
 
 disqualifications
 
 .
 
 [2]
 
 Because the trial court's order compels the District Attorney's Office's recusal, we review the order as one disqualifying the District Attorney and his staff.
 

 While generally interlocutory, an order disqualifying counsel is immediately appealable because it affects a substantial right.
 
 See
 

 Goldston v. American Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 726-27,
 
 392 S.E.2d 735
 
 , 736-37 (1990) ;
 
 see also
 

 Travco Hotels v. Piedmont Natural Gas Co.
 
 ,
 
 332 N.C. 288
 
 , 293,
 
 420 S.E.2d 426
 
 , 429 (1992) ("[T]he granting of a motion to disqualify counsel, unlike a denial of the motion, has immediate and irreparable consequences for both the disqualified attorney and the individual who hired the attorney. The attorney is irreparably deprived of exercising his right to represent a client. The
 
 *870
 
 client, likewise, is irreparably deprived of exercising the right to be represented by counsel of the client's choice. Neither deprivation can be adequately redressed by a later appeal of a final judgment adverse to the client.").
 

 In
 
 Scanlon
 
 , this Court held that a trial court's "decision regarding whether to disqualify counsel 'is discretionary with the trial judge and is not generally reviewable on appeal.' "
 
 Scanlon
 
 ,
 
 176 N.C. App. at 434
 
 ,
 
 626 S.E.2d at 786
 
 (citation omitted). This abuse of discretion standard is consistent with other decisions by both this Court and the North Carolina Supreme Court.
 
 See, e.g.,
 

 Travco Hotels
 
 ,
 
 332 N.C. at 295
 
 ,
 
 420 S.E.2d at 430
 
 ("Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." (citation omitted) ).
 

 When applying an abuse of discretion standard, our review "is limited to a determination of whether there was a clear abuse of discretion."
 
 White v. White
 
 ,
 
 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985) (citations omitted). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision."
 
 Id.
 
 at 777,
 
 324 S.E.2d at 833
 
 . On a motion for disqualification, "the findings of the trial court are binding on appeal if supported by any
 
 *687
 
 competent evidence, and the court's ruling may be disturbed only where there is a manifest abuse of discretion, or if the ruling is based on an error of law."
 
 State v. Rogers
 
 ,
 
 219 N.C. App. 296
 
 , 299,
 
 725 S.E.2d 342
 
 , 345 (2012) (citing
 
 State v. Taylor
 
 ,
 
 155 N.C. App. 251
 
 , 255,
 
 574 S.E.2d 58
 
 , 62 (2002) ).
 

 2. Discussion
 

 The principal case in our jurisdiction addressing a trial court's authority to disqualify a prosecutor is
 
 State v. Camacho
 
 ,
 
 329 N.C. 589
 
 ,
 
 406 S.E.2d 868
 
 (1991). In
 
 Camacho
 
 , the trial court ordered:
 

 [
 
 I
 
 ]
 
 n order to avoid even the possibility or impression of any conflict of interest
 
 , the Court directs that the District Attorney's Office immediately withdraw from the case; that the District Attorney's Office, including Ms. Shappert, have no further participation, either directly or indirectly, with the case; that the Attorney General's Office be contacted immediately by the District Attorney's Office for representation of the State in the matter; and that the Attorney General's Office shall immediately assume the prosecution of the case.
 

 Id.
 
 at 593,
 
 406 S.E.2d at 870
 
 (emphasis in original). Our Supreme Court addressed whether each directive in the trial court's order exceeded the trial court's authority.
 
 Id.
 
 at 593-95,
 
 406 S.E.2d at 870-72
 
 . The trial court had disqualified the district attorney and his staff from further participation in the defendant's case for the purpose of avoiding "even the possibility or impression of any conflict of interest."
 
 Id.
 
 at 595,
 
 406 S.E.2d at 871-72
 
 . The Supreme Court held "that the trial court exceeded its authority in several respects...."
 
 Id.
 
 at 595,
 
 406 S.E.2d at 872
 
 .
 

 Camacho
 
 articulated the rule that "a prosecutor may not be disqualified from prosecuting a criminal action in this State unless and until the trial court determines that
 
 an actual conflict of interests exists
 
 [,]" as defined by that opinion.
 
 Id.
 
 at 601-02,
 
 406 S.E.2d at 875-76
 
 (emphasis added) ("[W]e conclude that where a trial court has found 'an actual conflict of interests'
 
 as that term has been defined in this opinion
 
 , the trial court may disqualify the prosecutor ...." (emphasis added) ). The Court defined "an actual conflict of interests" as arising when "a District Attorney or a member of his or her staff has previously represented the defendant with regard to the charges to be prosecuted and, as a result of that former attorney-client relationship, the prosecution has obtained confidential information which may be used to the defendant's detriment at trial."
 
 Id.
 
 at 601,
 
 406 S.E.2d at 875
 
 . The Court went on to note that "[e]ven then ... any order of disqualification ordinarily should be
 
 *688
 
 directed only to individual prosecutors who have been exposed to such information."
 
 Id.
 
 at 601,
 
 406 S.E.2d at 876
 
 .
 

 Our Supreme Court in
 
 Camacho
 
 considered the constitutional nature of the office of a district attorney, noting: "The several District Attorneys of the State are independent constitutional officers, elected in their districts
 
 *871
 
 by the qualified voters thereof, and their special duties are prescribed by the Constitution of North Carolina and by statutes."
 
 Id.
 
 at 593,
 
 406 S.E.2d at 870
 
 (citations omitted). It was with this constitutional and statutory mandate in mind that the Court rejected
 
 per se
 
 rules of disqualification and concluded: "The courts of this State ... must, at the very least, make every possible effort to avoid unnecessarily interfering with the District Attorneys in their performance of such duties.... [And] any order tending to infringe upon the constitutional powers and duties of an elected District Attorney must be drawn as narrowly as possible."
 
 Id.
 
 at 595,
 
 406 S.E.2d at 872
 
 (citations omitted).
 

 Camacho
 
 ultimately held that a trial court considering disqualifying a prosecutor should balance the respective interests of the defendant, the government, and the public.
 
 Id.
 
 at 600,
 
 406 S.E.2d at 874-75
 
 . The Court adopted the balancing test established by the United States Court of Appeals for the Seventh Circuit in
 
 United States v. Goot
 
 ,
 
 894 F.2d 231
 
 , 236 (7th Cir. 1990),
 
 cert. denied
 
 ,
 
 498 U.S. 811
 
 ,
 
 111 S.Ct. 45
 
 ,
 
 112 L.Ed.2d 22
 
 (1990).
 
 Goot
 
 reasoned that
 

 [The defendant] has a fundamental interest in his fifth amendment right not to be deprived of liberty without due process of law and in his sixth amendment right to counsel. The government has an interest in fulfilling its public protection function. To that end, the convenience of utilizing the office situated in the
 
 locus criminis
 
 is not lightly to be discarded. Furthermore, the government has a legitimate interest in attracting qualified lawyers to its service.
 

 894 F.2d at 236
 
 . The Seventh Circuit panel affirmed the denial of the defendant's motion to disqualify the entire United States District Attorney's Office because the government had sufficiently screened the United States Attorney from the prosecution of the defendant "so that each and every particular interest of [the defendant], the government, and the public was met."
 

 Id.
 

 at 237
 
 .
 

 The trial court's order in the present case fails for several reasons. First,
 
 Camacho
 
 plainly directs that a prosecutor may be disqualified only when the trial court has found the existence of a conflict of interests as defined by that decision-a prior representation of Defendant by the
 
 *689
 
 prosecutor in the matter sought to be prosecuted, in which that prosecutor has obtained confidential information detrimental to Defendant. The trial court here made no such finding. Nor was there any evidence before the trial court, at the time of its order, that would support a finding that a member of the District Attorney's Office had previously represented Defendant in a related matter and received confidential information detrimental to Defendant. Rather, the trial court explicitly justified its recusal order based on a different consideration, stating that "the civil action filed in File No. 16 CVS 9, against the District Attorney for the 13th Judicial District, creates a conflict of interest which prevents the District Attorney from being involved in further prosecution of the Defendant." The mere filing of a civil suit is insufficient to meet
 
 Camacho
 
 's criteria to disqualify the District Attorney or any of his staff.
 

 Even assuming
 
 arguendo
 
 that a conflict of interests beyond the definition provided in
 
 Camacho
 
 could support an order compelling the recusal of-
 
 i.e.
 
 , disqualifying-a prosecutor, the unilateral filing of a civil suit by a criminal defendant would not, on its own, suffice. The North Carolina Supreme Court in
 
 State v. Britt
 
 ,
 
 291 N.C 528
 
 ,
 
 231 S.E.2d 644
 
 (1977), entertained possible scenarios in which it might be proper to remove a prosecutor. In
 
 Britt
 
 , the defendant sought to remove a prosecutor based "upon the fact that this [was] the fourth trial for this offense by the same district attorney, and the fact that [the North Carolina Supreme] Court reversed the conviction of [the] defendant for over-zealous conduct on the part of the district attorney...."
 
 Id.
 
 at 541,
 
 231 S.E.2d at 653
 
 . The Supreme Court, rejecting the defendant's argument, explained that "[i]n the discharge of his duties the prosecuting attorney is not required to be, and should not be, neutral. He is not the judge, but the advocate of the State's interest in the matter at hand."
 
 Id.
 
 at 541-42,
 
 231 S.E.2d at 653
 
 . The Court noted that "the prosecutor was acting as the advocate of the State's interest.... There [had] been no showing of misconduct in [the] trial ... [nor] evidence that the prosecutor [had] any conflict of interest, E.g., [sic] prior representation of [the] defendant; nor that the prosecutor [had] any self-interest in obtaining the conviction of [the] defendant,
 
 *872
 
 E.g., [sic] revenge; nor that the prosecutor [had] any interest adverse to that of protecting the State."
 
 Id.
 
 at 542,
 
 231 S.E.2d at 653-54
 
 (citations omitted).
 

 A conflict of interests sufficient to disqualify a prosecutor cannot arise merely from the unilateral actions of a criminal defendant. The trial court's order here included no findings of fact as to how the substance of the civil case created a conflict of interest for the District Attorney, or any of his staff, in the criminal action.
 

 *690
 
 Moreover, the trial court's order is not drawn as narrowly as possible, as required by our Supreme Court.
 
 Camacho
 
 directs that "any order tending to infringe upon the constitutional powers and duties of an elected District Attorney must be drawn as narrowly as possible."
 
 329 N.C. at 595
 
 ,
 
 406 S.E.2d at 872
 
 . The trial court's order here disqualifies the named District Attorney in the civil suit, as well as the
 
 entire
 
 District Attorney's Office for the 13th Judicial District. Additionally, the order applies not only to Defendant, but to five other unnamed co-defendants.
 

 Because the trial court's order lacks the proper findings sufficient to support the disqualification of the prosecutor or any of his staff, and because the trial court's order is not narrowly tailored to address any possible conflict of interests, we hold that the trial court exceeded its lawful authority in ordering the recusal of the District Attorney for the 13th Judicial District and his entire staff.
 
 [3]
 

 Conclusion
 

 For the foregoing reasons, we vacate the trial court's recusal order and remand for further proceedings.
 

 VACATED AND REMANDED.
 

 Judges ELMORE and DIETZ concur.
 

 [1]
 

 The parties stipulated to the events of the 11 January 2016 Criminal Session of Bladen County Superior Court as no recordings or transcripts were taken of the oral order.
 

 [2]
 

 Black's Law Dictionary defines
 
 recusal
 
 as "
 
 removal of oneself
 
 as judge or policy-maker in a particular matter, esp. because of a conflict of interest." Black's Law Dictionary (10th ed. 2014) (emphasis added).
 
 Disqualification
 
 is defined as "[s]omething that incapacitates, disables, or makes one ineligible; esp., a bias or conflict of interest that prevents a judge or juror from impartially hearing a case, or that prevents a lawyer from representing a party." Black's Law Dictionary (10th ed. 2014).
 

 [3]
 

 We note that the trial court did not proceed with a hearing on Defendant's motion to dismiss for prosecutorial misconduct. Our opinion today does not address that motion or Defendant's contentions therein.