IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-183

Filed 7 May 2025

Durham County, No. 16CVD111-310

MARINO M. GREEN, Plaintiff,

v.

FELICIA L. BRANCH, Defendant.

Appeal by plaintiff from order entered 29 September 2023 by Judge Clayton Jones in District Court, Durham County. Heard in the Court of Appeals 10 September 2024.

*Meynardie & Nanney, PLLC, by Joseph H. Nanney, Jr., for plaintiff-appellant.*

*Felicia L. Branch, pro se, defendant-appellee.*

STROUD, Judge.

Plaintiff-Appellant appeals from an Order entered by the trial court on 29 September 2023. Because the trial judge had entered an Order of Recusal without any limitation before his entry of the Order on appeal, he had no authority to enter the Order on appeal. We vacate the Order and remand for a new hearing.

## I. Background

The determinative issue on appeal is whether the trial judge lacked authority to enter an Order ruling upon several claims and motions after his recusal from the case. For this reason, we need not address the factual background of the parties'

substantive claims in detail, but the procedural history is necessary. In summary, Plaintiff and Defendant were married in 2003 and separated in December 2015. The parties had three children together during their marriage. On 29 January 2016, Plaintiff filed a complaint against Defendant asserting claims for child custody, child support, post-separation support and alimony, equitable distribution, and attorney's fees. Defendant filed her answer and counterclaim on 3 March 2016.

The trial court entered a Consent Order on 18 August 2016. This Consent Order indicated the parties "had reached a full settlement on the issues of temporary custody, post-separation support, alimony, equitable distribution and attorney's fees, although the parties reserve the right to return to this court for a permanent custody hearing if necessary[.]" The Consent Order set out provisions regarding the sale of the former marital residence and distribution of the net proceeds; distribution of various items of marital property, including a direction for entry of a qualified domestic relations order ("QDRO") to distribute a retirement account; joint legal custody of the minor children; temporary physical custody including a detailed weekly schedule; a direction for preparation of an order appointing a named GAL "to help . . . resolve the issue of permanent custody[ ]"; and waiver of Plaintiff's claims for post-separation support or alimony.

On 17 July 2018, Plaintiff filed an amended motion to show cause. In this motion, Plaintiff alleged Defendant "willfully violated" the 18 August 2016 Consent Order by: (1) interfering with Plaintiff's physical access and visitation with the minor

children; (2) preventing contact between Plaintiff and the minor children; and (3) failing to select a mutually agreed upon realtor to list the marital residence. On 24 July 2018, the Honorable Pat Evans held a pre-trial conference regarding Plaintiff's amended motion to show cause, child custody, "and child support."[1] The Pretrial Conference Order set a date for hearing of 17 September 2018. The motions were apparently not heard on 17 September; on 27 September 2018, the Durham Family Court Case Coordinator filed a Calendar Request and Notice of Hearing for "[t]rial/[h]earing" of "[custody]" on 21 November 2018.

Plaintiff apparently filed a "Motion for Recusal, Change of Venue and Summary Judgement (sic)" on 24 October 2018, although the 2018 motion for recusal is not in our record.[2] On 21 November 2018, Judge Evans heard Plaintiff's motion for recusal and denied "all requests for relief contained in said [m]otion[.]" The 21 December 2018 order of recusal states that after denial of Plaintiff's motion for recusal, "[t]rial began . . . on the outstanding issues of permanent child custody, and such trial shall be continued on or about February 20, 2019." Therefore, according to the 2018 order of recusal and the Narrative of Proceedings filed in this appeal, the hearing regarding permanent child custody began before Judge Evans in November

---

[1] Our record does not include a motion for modification of child support, but this issue was included in matters addressed in the Pretrial Conference Order.

[2] Because this 2018 motion for recusal is not in our record, it is unclear which District Court Judge Plaintiff requested to recuse in October 2018, but it appears to have been Judge Pat Evans.

2018.[3]

On 7 March 2019, District Court Judge Clayton Jones began hearing "the remainder of the trial" on permanent child custody which Judge Evans had started in November 2018.[4] We note we do not have a transcript of this hearing but our record on appeal includes a "Narrative of the Proceedings in the Final Child Support, Child Custody Trial Pursuant to Rule 9(c) [of the North Carolina Rules of Appellate Procedure]." Judge Jones conducted the hearing on the issues of child custody and child support.[5] According to the Narrative of Proceedings,

> [t]he [c]ourt made an oral ruling from the bench finding no willful contempt with respect to Plaintiff[ ]'s motions, determined physical and legal custody would remain the same as the [C]onsent [O]rder, named the realtor the parties would use, ruled that Defendant[ ] could buy out Plaintiff[ ], [and] determined child support arrears due to Defendant[.]

In addition, "[t]he [c]ourt directed [Defendant's] Attorney . . . to draft the [c]ourt's oral ruling to writing and submit it by May 27, 2019." Our record has no indication that a draft order was prepared or submitted in 2019.

On 23 September 2021, Plaintiff filed a Motion for Recusal of Judge Clayton

---

[3] The briefs of both parties agree that Judge Evans began hearing the matter of permanent custody in November 2018 but Judge Clayton Jones "conducted the remainder of the trial" in February and March of 2019.

[4] The Narrative of Proceedings states in the first sentence that "Defendant-Appellee *continues* direct testimony with respect to child custody." (Emphasis added.)

[5] Our record does not include any motions regarding child support, and according to the Narrative of Proceedings, no motion regarding child support had been filed, but the trial court stated "that he wanted to make sure that support was being provided."

Jones and Change of Venue (the "Motion for Recusal"). In the *pro se* Motion for Recusal, Plaintiff requested Judge Jones to recuse himself, contending he "express[ed] personal bias against . . . Plaintiff and Consent Order in court 2/20/19 and 3/17/19," and had "an apparent conflict of interest" in the matter. The Motion for Recusal made additional detailed factual allegations regarding his reasons for believing Judge Jones was personally biased against him that we need not address in detail.

On 29 September 2021, Judge Jones conducted a hearing on the Plaintiff's Motion for Recusal.[6] The Narrative of Proceedings of this hearing as to the Motion for Recusal states:

> The [c]ourt then asked his clerk to put the case on the Honorable Dave Hall's calendar. Defendant[ ] informed the court that she had not been served the [M]otion for [R]ecusal and change venue. The court directed the clerk to provide her with a copy of everything. The [c]ourt then addressed the parties and stated that he had not fully read the [Motion for Recusal], that the [c]ourt would recuse himself because he had 46 cases on his calendar that week, that he would not be putting a basis on the recusal order, that [he] "just [didn't] really want to deal with it", and he would recuse himself and transfer the case somewhere else. The [c]ourt denied Plaintiff[ ]'s motion to change venue, recused himself and stated that he would take one of Judge Hall's cases.

On the same day, Judge Jones entered an Order of Recusal (the "Order of Recusal").

---

[6] The record includes a Narrative of Proceedings pursuant to North Carolina Rule of Appellate Procedure 9(c). The Narrative of Proceedings indicates the parties and trial court first discussed a "motion for contempt" filed by Plaintiff, although it is not clear which motion they were referring to.

The Order of Recusal states:

> The undersigned Judge for the Fourteenth Judicial District hereby recuses herself/himself in the above-entitled action for the following reason(s):
>
> *Plaintiff filed a motion to have Judge Jones recused from this case and Judge Jones granted [P]laintiff's motion.*
>
> The original of this order should be placed in the court file.
>
> The case is now assigned to the Honorable O. David Hall.

(Emphasis in original.)

Two years later, after recusing himself from "this case," Judge Jones entered an Order on 29 September 2023 *nunc pro tunc* to 27 May 2019, ruling on the matters heard at the hearing concluded on 7 March 2019, which started before Judge Evans on 21 November 2018.  In general, this Order addresses sale of the marital residence, legal and physical custody of the minor children, and child support; it also established child support arrears of $20,737.94 and denied Plaintiff's "show cause matters."

The trial court's 29 September 2023 Order was served on the parties by the Family Court Case Manager on 27 October 2023.  Plaintiff timely filed notice of appeal as to this Order on 21 November 2023.  The Order of Recusal was not appealed.

## II.    Recusal

Plaintiff argues the trial court, specifically Judge Jones, erred in entering the 29 September 2023 Order after he recused himself on 29 September 2021.  He contends Judge Jones "had no authority to enter the [O]rder" following his recusal and that this Order "must be vacated."  We agree.  Because the determinative issue

on appeal is whether Judge Jones had authority to enter the Order, we will not address Plaintiff's remaining arguments as to the substance of the Order itself.

Citing *Romulus v. Romulus*, Plaintiff argues our standard of review as to whether Judge Jones had authority to enter the Order after his recusal is a question of law of which we review *de novo*. 216 N.C. App. 28, 31-32, 715 S.E.2d 889, 892 (2011) (whether a trial judge had statutory authority and subject matter jurisdiction to enter an order was "a question of law or legal inference which is reviewed *de novo*" (citations and quotation marks omitted)). Defendant does not oppose Plaintiff's argument regarding the proper standard of review for this issue. Although no case has explicitly identified the standard of review for this particular legal question, a close reading of prior cases cited in this opinion reveals that the cases have considered the issue as a legal question subject to *de novo* review. "A question of law is reviewed *de novo*. Under the *de novo* standard, the Court considers the matter anew and freely substitutes its own judgment for that of the lower court." *In re A.M.*, 220 N.C. App. 136, 137, 724 S.E.2d 651, 653 (2012) (citation and quotation marks omitted).

In his brief, Plaintiff cites this Court's opinion in *Hudson v. Hudson*, 293 N.C. App. 87, 900 S.E.2d 131 (2024). In *Hudson*, this Court discussed whether a trial judge had authority to enter an order after her recusal from the case:

> Once a trial judge has been disqualified or has recused herself, that judge may not enter an order or judgment in the case in which she was presiding. *See Motors Corp. v. Hagwood*, 233 N.C. 57, 58-61, 62 S.E.2d 518, 518-20 (1950) (explaining that a hearing

conducted by a trial court who already had retired, but was attempting to serve as an emergency judge, was *coram non judice*, and the judgment entered was vacated). *Accord Bolt v. Smith*, 594 So.2d 864, 864 (Fla. Dist. Ct. App. 1992) ("Once a trial judge has recused himself, further orders of the recused judge are void and have no effect."); *Byrd v. Brown*, 613 S.W.2d 695, 699-700 (Mo. Ct. App. 1981) (holding that the trial judge lacked "authority" over the case once the judge was disqualified and, therefore, the judge's subsequent orders were "void"). Therefore, in addition to the stay pending appeal, the trial judge's recusal also operated to divest her of authority to enter the subsequent order awarding attorneys' fees.

*Id.* at 90, 900 S.E.2d at 133-34 (citations, quotation marks, and brackets omitted).

Plaintiff also cites opinions from the Federal Third Circuit in advancing his argument. In *Moody v. Simmons*, the trial judge repeatedly stated at a hearing that he would have to recuse from the case. *See* 858 F.2d 137, 140 (3d Cir. 1988). At the end of a particularly contentious hearing, the trial judge stated again he would be recusing "because there have been a lot of acid type remarks made here[.]" *Id.* (original brackets omitted). "Thus, the [29 January 1988] hearing, which is said to have consumed six and one-half hours, concluded the same way it had begun—with the judge stating his intention to recuse himself from the case." *Id.* Despite these statements, the trial judge later entered a substantive order "accompanied by 48 pages of 'findings of fact,' many of which, congruent with the judge's earlier remarks, are highly critical of [the] Trustee's counsel." *Id.* at 140-41. After issuing the "substantive" order, "the district judge entered an order recusing himself from further

proceedings in the bankruptcy case." *Id.* at 141. The Federal Third Circuit Court set aside the order entered by the trial judge after he had announced that he would recuse from the case, stating that "[o]nce a judge has disqualified himself, he or she may enter no further orders in the case. His power is limited to performing ministerial duties necessary to transfer the case to another judge (including the entering of 'housekeeping' orders)." *Id.* at 143 (citations omitted).

The Federal Fourth Circuit also discussed a judge's lack of authority to enter an order where the judge had previously entered an order of recusal from the case in *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337 (4th Cir. 2024). In *Duke Energy*, Judge Bell recused himself from the case because a lawyer from his former firm appeared representing one of the parties. *See id.* at 343. He had followed his "standing prophylactic policy, adopted when he ascended the bench, to recuse himself from cases involving lawyers from his former firm," and the case was assigned to another judge. *Id.* at 367. About two years later, the other judge developed a conflict, and the case was re-assigned to Judge Bell, "who had by then abandoned his initial prophylactic policy." *Id.* But NTE filed a motion for his recusal, "arguing that once a judge has recused himself in a case, he should not later return to that case, regardless of whether the original recusal was necessary or whether the original conflict had been resolved." *Id.* Judge Bell determined that "his prior withdrawal 'did not reflect a considered "recusal,"'" and he denied the motion to recuse. *Id.* He later entered an order granting summary judgment for Duke Energy, and NTE

appealed both the summary judgment order and the order denying the motion to recuse. *See id.* On appeal, the Fourth Circuit vacated the summary judgment order and then addressed NTE's argument regarding the denial of its motion for recusal. *See id.* at 368. NTE argued that if the district court's order was vacated, the case should be remanded to "a different district judge, as its motion to recuse Judge Bell under 28 U.S.C. § 455(a) should have been granted. Indeed, NTE argue[d] that Judge Bell's refusal to recuse himself serves as an independent ground to vacate the summary judgment." *Id.* at 367.

The Fourth Circuit agreed that Judge Bell should have granted the motion to recuse and remanded the case to a different judge:

> No one contends that Judge Bell acted inappropriately when he disqualified himself initially, nor does anyone contend that Judge Bell acted inappropriately when he abandoned the initial prophylactic recusal policy. Rather, the question presented here is whether a judge, once he recuses himself from a case, can return to the same case later if circumstances have changed such that he no longer perceives himself to have a conflict or an appearance of one.
>
> For good reasons, especially for the appearance of impartiality, we have held that once a judge is recused, the judge is *out of service* insofar as that case is concerned and that he should take no action which would possibly affect the outcome of the case. Such a brightline rule can be applied with ease and promotes the goal of ensuring public confidence in the impartiality of the judicial process. It also accords with the practices adopted by several other jurisdictions, which have implemented a "once recused, always recused" rule. *See United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997) (holding that a judge who recused himself after granting the defendant a new trial should not

- 10 -

have ruled on a motion for reconsideration); *El Fenix de P.R. v. M/Y JOHANNY*, 36 F.3d 136, 141 (1st Cir. 1994) (holding that a judge who has recused himself cannot reconsider the order of recusal); *Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir. 1988) (holding that a judge should not have continued to enter non-ministerial orders after announcing his intention to disqualify himself because his daughter worked for one of the parties).

In this case, because Judge Bell had previously recused himself for a potential conflict, prudence instructs that he should not have reentered the case, even after what the docket identified as a "conflict" had been resolved. That rule serves the judicial process well, and we adhere to it.

*Id.* at 368 (emphasis in original) (citations, quotation marks, and brackets omitted).

We are not bound by the federal cases cited by Plaintiff, but these cases provide a thoughtful analysis of questions of recusal which we find persuasive. *See Woody v. AccuQuest Hearing Ctr., LLC*, 284 N.C. App. 540, 549, 877 S.E.2d 1, 8 (2022) ("[W]ith regard to matters of North Carolina state law, neither this Court nor our Supreme Court is bound by the decisions of federal courts, including the Supreme Court of the United States, although in our discretion we may conclude that the reasoning of such decisions is persuasive." (citation, quotation marks, and brackets omitted)). These cases support the common-sense consensus that trial judges lack authority to take any action in a case after the judge has been recused by a court order, particularly where the recusal order did not limit the duration or purposes of the recusal.

In *Hudson*, this Court concluded that the trial judge lacked authority to enter an order following her recusal from the case. *See Hudson*, 293 N.C. App. at 90-91,

900 S.E.2d at 133-34. Accordingly, this Court vacated the order entered by the trial judge after her recusal and remanded the matter to the trial court for a new hearing. *See id.* at 92, 900 S.E.2d at 134. "This Court is bound by its prior decisions encompassing the same legal issue." *In re T.M.H.*, 186 N.C. App. 451, 455, 652 S.E.2d 1, 3 (2007) (citation omitted). We are bound by our prior precedent in *Hudson* that a trial judge lacks authority to enter substantive orders in cases after the judge has recused himself from the case without any limitation or qualification to that recusal. And as the Fourth Circuit noted, our application of this precedent "eliminates gray areas, public confusion, and any question about the integrity of the judicial process." *Duke Energy,* 111 F.4th at 368.

Defendant's argument on appeal relies heavily on Judge Jones's statements at the hearing that "he had not read the motion for recusal and change of venue" and that he "stated . . . he had quite a number of cases that week and granted the motion to recuse specifically with no basis given and assigned the case to another judge." But we are bound by the Order of Recusal the trial court entered, not by his statements in rendering the ruling. It is well-established that the written, filed order is controlling, even if the trial court's statements in open court do not match the exact terms of the written order:

> The trial judge's comments during the hearing as to its consideration of the entire case file, evidence and law are not controlling; the written court order as entered is controlling. A judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of

- 12 -

> court. The announcement of judgment in open court is the
> mere rendering of judgment, not the entry of judgment.

*Fayetteville Publ'g Co. v. Advanced Internet Techs., Inc.*, 192 N.C. App. 419, 425, 665 S.E.2d 518, 522 (2008) (citations and quotation marks omitted).

Although Judge Jones mentioned his heavy case load at the hearing on the Motion for Recusal, the Order of Recusal clearly states as the reason for recusal that "Plaintiff filed a motion to have Judge Jones recused from this case and Judge Jones granted [P]laintiff's motion."[7] The Order of Recusal also assigned the case to the Honorable O. David Hall. The clear terms of this Order of Recusal indicate Judge Jones recused himself based on Plaintiff's Motion for Recusal *and* he assigned the case to another judge, indicating that he was not simply continuing the case to another day or limiting his recusal in any way.

Defendant further argues though Judge Jones recused himself, "[h]e did not disqualify himself from the parties' case." She contends "the terms disqualification and recusal are often used interchangeably. By using the terms interchangeably, confusion arises as is evidenced in this case. Disqualification of a judge requires recusal. However, recusal does not necessarily indicate disqualification."

> Black's Law Dictionary defines *recusal* as "removal of
> oneself as judge or policy-maker in a particular matter, esp.

---

[7] Defendant essentially asks this Court to assume Judge Jones did not read Plaintiff's Motion for Recusal before entering the Order of Recusal based on his statements. But even if Judge Jones had not read the Motion for Recusal before his statements in open court, we will not assume he did not read the Motion for Recusal after his statements in open court and before he entered the written order which explicitly granted Plaintiff's Motion for Recusal.

because of a conflict of interest." *Disqualification* is defined as "something that incapacitates, disables, or makes one ineligible; esp., a bias or conflict of interest that prevents a judge or juror from impartially hearing a case, or that prevents a lawyer from representing a party."

*State v. Smith*, 258 N.C. App. 682, 686, n. 2, 813 S.E.2d 867, 869, n. 2 (2018) (emphasis in original) (citations and brackets omitted).

In making her argument, Defendant directs this Court to the North Carolina Code of Judicial Conduct Canon 3(C)(1), which provides "a judge should disqualify himself/herself in a proceeding in which the judge's impartiality may reasonably be questioned, including but not limited to . . . personal bias or prejudice concerning a party[.]" N.C. C.J.C. Canon 3(C)(1)(a). Defendant contends that because Judge Jones gave no reason for granting the recusal, other than explaining he had a heavy caseload, he did not "disqualify" himself due to any "impartiality" reasons under Canon 3. Further, "[r]emoving himself from the case due to time constraints . . . d[id] not prohibit . . . Judge [Jones] from being reassigned the case at a future date for further proceedings or orders."

Canon 3 is inapplicable to this case as it outlines grounds and circumstances in which "a judge *should disqualify* himself/herself in a proceeding[.]" *Id.* (emphasis added). It is not a matter for this Court to determine whether Judge Jones should have disqualified himself under the Code of Judicial Conduct due to alleged bias, nor to determine whether his recusal was required under these circumstances as the Order of Recusal itself was not appealed. *See Hudson*, 293 N.C. App. at 88, 900 S.E.2d

at 132-33 ("The recusal order was not appealed, and we express no opinion on whether [the trial judge] was in fact required to recuse. The order of recusal is the law of the case."). And even if we assume there is some relevant difference between the words "disqualification" and "recusal" for purposes of this case, we are bound by the trial court's Order of Recusal. Judge Jones recused himself and his reason for recusal was that he granted the Plaintiff's Motion for Recusal.

Defendant cites no caselaw, nor can we find caselaw, supporting the claim that a trial court's heavy caseload is a proper reason for some sort of temporary recusal, so the judge may then resume participation in the case when his calendar permits. And here, Judge Jones simply recused himself and specifically assigned the case to another judge; he did not continue the case to another date due to the heavy caseload. Although it is unfortunately a common occurrence for a judge not to be able to hear a calendared case due to the time needed to dispose of other cases on the calendar, the case is then continued to another court date. A heavy caseload is not a basis for a judge to recuse himself from a case, and we will not assume this rationale, especially where the trial court's Order of Recusal states that the recusal is based on Plaintiff's Motion for Recusal, not the crowded calendar.

In *Hudson*, this Court determined that "where the recusal order itself provides the recusal was based upon perceived bias against one party, [the trial judge] had no authority to enter the order on appeal after her recusal." *Id.* at 90, 900 S.E.2d at 134. The trial judge in *Hudson* recused herself "to 'promote justice' and to allow 'all parties

to feel heard'" even though "recusal was not necessarily required under the Code of Judicial Conduct." *Id.* at 91, 900 S.E.2d at 134 (brackets omitted). Here, the Order of Recusal contained no specific reason for Judge Jones's recusal other than Plaintiff's Motion for Recusal, and Plaintiff's Motion for Recusal alleged bias and conflict of interest. Again, we express no opinion on the substance of Plaintiff's allegations in his Motion for Recusal or whether Judge Jones was actually required to recuse, since Judge Jones did not specifically address the allegations, but we must accept the trial court's Order of Recusal as it is written.

We also note that on remand a new hearing is required in these circumstances. In *Hudson*, this Court noted

> [o]ur Supreme Court determined in *Lange* that Rule 63 would give a newly assigned judge discretion to enter the same order on behalf of the judge who heard the matter if this was based only on that judge's retirement, but if the recused judge was properly recused, Rule 63 would not allow the newly assigned judge the discretion to enter the same order on behalf of the recused judge. Therefore, not only did [the trial judge] lack . . . authority to enter the order after her recusal, on remand the trial court must hold a new hearing.

*Id.* (citing *Lange v. Lange*, 357 N.C. 645, 648, 588 S.E.2d 877, 879-80 (2003)). As in *Hudson*, because Judge Jones heard the evidence in the hearing that concluded on 7 March 2019,[8] but he subsequently recused himself from the case on 29 September

---

[8] Judge Evans heard the first day of the hearing on 21 November 2018, according to our record, but she did not hear the portions of the hearing on 20 February 2019 and 7 March 2020.

2021, we must vacate the trial court's Order and remand for a new hearing before another judge. *See id.*

### III.    Conclusion

We vacate the trial court's 29 September 2023 Order as Judge Jones did not have authority to enter the Order after the Order of Recusal entered on 21 September 2021, and we remand this matter to the trial court for a new hearing and entry of a new order.

VACATED AND REMANDED.

Judges HAMPSON and GORE concur.